UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WAYNE MUNDY,

    Plaintiff,

v.                                                         Case No. 5:04-cv-150
                                                          HON. R. ALLAN EDGAR

MICHIGAN DEPARTMENT OF
CORRECTIONS, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff prisoner Wayne Mundy filed this 42 U.S.C. § 1983 civil rights complaint against defendants Michigan Department of Corrections, Kenneth McKee and James Armstrong. Plaintiff alleges that defendants have violated his First and Eighth Amendment rights by infringing his freedom of religion rights. Plaintiff's responsive pleading to defendants' dispositive motion also asserts for the first time that defendants have violated the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-3. Plaintiff is a member of the Christian Identity church. The MDOC does not allow a separate group worship for members of the Christian Identity Church. Plaintiff requests allowance to attend a Christian Identity service held by the MDOC, to receive religious materials when they arrive in the mail, monetary damages of $10,000, and an injunction against defendants.

Defendants filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant

carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. Id. at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). While the evidence must be viewed in the light most favorable to the nonmoving party, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants argue that plaintiff never filed a grievance against defendant Armstrong. Plaintiff argues that since defendant Armstrong reviewed the grievances, he cannot argue that he was unaware of the subject matter of the grievances. Defendant Armstrong's only involvement in this matter was in reviewing the grievances that plaintiff filed against defendant McKee. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). A district

court must enforce the exhaustion requirement sua sponte. *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998); *accord Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999).

A prisoner must allege and show that he has exhausted all available administrative remedies and should attach to his § 1983 complaint the administrative decision disposing of his complaint, if the decision is available. *Brown*, 139 F.3d at 1104. In the absence of written documentation, the prisoner must describe with specificity the administrative proceeding and its outcome. *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000). A prisoner must make particularized averments as necessary for the district court to determine what, if any, claims have been exhausted or what has been done in an attempt to exhaust the claims. *Id.* In addition, a prisoner must specifically mention the involved parties in the grievance to make prison officials aware of the problems so that the prison has a chance to address the claims before they reach federal court. *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001); *Thomas v. Woolum*, 337 F.3d 720, 735 (6th Cir. 2003); *Vandiver v. Martin*, No. 02-1338, 2002 WL 31166925, at *2 (6th Cir. Sept. 27, 2002) ("The issues [plaintiff] may raise, and the defendants he may name, in his lawsuit are limited to the specific issues raised, and the specific individuals mentioned, in his grievance.").

Plaintiff never filed a grievance against defendant Armstrong. The fact that defendant Armstrong reviewed the grievances filed against defendant McKee does not excuse plaintiff's obligation to file a grievance against each of the named defendants before filing a civil complaint in this court. Because Plaintiff's complaint contains both exhausted and unexhausted claims, the Court will dismiss his action pursuant to the "total exhaustion" rule. Under the total exhaustion rule, the presence of an unexhausted claim results in the dismissal of the entire action. *Jones Bey v. Johnson*, *et al.*, 407 F.3d 801 (6th Cir. 2005). Dismissal of this action without prejudice is appropriate when a prisoner has failed to show that he exhausted available administrative remedies.

*See Freeman*, 196 F.3d at 645; *Brown*, 139 F.3d at 1104; *White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997). Dismissal for failing to exhaust available administrative remedies does not relieve a plaintiff from payment of the civil action filing fee. *Omar v. Lesza*, No. 97 C 5817, 1997 WL 534361, at *1 (N.D. Ill. Aug. 26, 1997). Accordingly, it is recommended that the Court dismiss Plaintiff's action without prejudice.

Alternatively, plaintiff's complaint is subject to dismissal on the merits. In 1994 the Michigan Department of Corrections determined that the Christian Identity Faith would not be considered a recognized religion in the prison facilities. The determination was based upon a recommendation from the Chaplains Advisory Counsel that concluded that the Christian Identity Faith religion is a compilation of Christian beliefs and practices in other Christian services. As a result, there is not a separate Christian Identity service. Those prisoners who practice the Christian Identity faith may attend other Christian services at the prison.

Generally, any regulation which infringes upon a fundamental right must be justified by a "compelling state interest." *See*, *for example*, *Wisconsin v. Yoder*, 406 U.S. 205 (1972). However, as a prisoner, plaintiff's constitutional rights are subject to severe restriction without such a showing. *See*, *for example*, *Bell v. Wolfish*, 441 U.S. 520 (1979) (restriction on receipt of reading materials); *Hudson v. Palmer*, 468 U.S. 517 (1984) (privacy); *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974) (right to call witnesses); *Richardson v. Ramirez*, 418 U.S. 24 (1974) (vote to close). *See*, *generally*, *Washington v. Harper*, 494 U.S. 210 (1990); *Turner v. Safley*, 482 U.S. 78 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987).

Rather, the standard by which prison regulations impinging on prisoner constitutional rights is judged is "reasonableness." *Turner v. Safley*, 482 U.S. 78 (1987); *Washington v. Harper*, 494 U.S. 210, 224 (1990). In *Turner*, the Supreme Court expressly rejected any degree of

"heightened scrutiny" in order to ensure that "prisoner administrators. . .and not the courts. . .make the difficult judgments concerning institutional operations." *Turner*, 482 U.S. at 89, quoting *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119 (1977).

In *Turner*, the court set forth four factors, "relevant in determining the reasonableness of the regulation at issue." 482 U.S. at 89-91. First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it. *Id.* at 89, quoting *Block v. Rutherford*, 468 U.S. 576, 586 (1984). Second, the reasonableness of a restriction takes into account whether there are "alternative means of exercising the right that remain open to the prison inmate." *Turner*, 482 U.S. at 90. Third, the court should consider the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Turner*, 482 U.S. at 90. Finally, the existence or absence of ready alternatives of accommodating the prisoners' rights is relevant to the reasonableness issue. *Turner*, 482 U.S. at 90. As stated by the court, this final factor, is "not a 'least restrictive alternative' test." *Id.* at 90. "Prison officials need not show that '*no* reasonable method exists by which [prisoners] rights can be accommodated without creating bonafide [prison] problems." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987).

The MDOC long ago decided that separate services for Christian Identity prisoners were not required. The prison can make these types of determinations because scheduling constraints make it unreasonable to provide group worship for every religion practice at the prison. Christian services are already available at the prisons. A separate Christian Identity service is not constitutionally required. The Sixth Circuit has held that a separate group service for Christian Identity prisoners is not required by the MDOC. *Bruton v. McGinnis*, 1997 WL 139797 (6th Cir., March 26, 1997).

Moreover, neither defendant Armstrong or McKee were involved in the decision making process to disallow a separate group service for members of the Christian Identity process. Similarly, plaintiff makes nonspecific claims about the rejection of religious materials by the mail room staff. Defendants clearly were not involved in rejecting mail materials. Moreover, it appears that plaintiff received the materials after the initial rejection.

Plaintiff also has asserted that his Eighth Amendment rights were violated by the refusal to allow him to practice his religious beliefs. However, the Eighth Amendment is not relevant to these claims. The Eighth Amendment prohibits cruel and unusual punishment. Traditionally, the cruel and unusual punishment clause was interpreted to prohibit barbarous or shocking forms of punishment. Over the years, the concept of cruel and unusual punishment has been expanded to encompass punishments which are unconscionably excessive in relation to the offense committed. *See Gregg v. Georgia*, 428 U.S. 153, 173 (1976). Furthermore, punishment which is without penological justification or involves the unnecessary and wanton infliction of pain also violates the Eighth Amendment's proscriptions. *See Rhodes v. Chapman*, 452 U.S. 337 (1981). *See also, Gregg*, 428 U.S. at 173. In short, there shall be no gratuitous infliction of suffering. *Gregg*, 428 U.S. at 183.

The Eighth Amendment's proscription against cruel and unusual punishment has also been extended to require certain minimal living conditions within the prison environment. Under the recently clarified "deliberate indifference" standard applicable to such claims, plaintiff must establish both that he is being denied "the minimal civilized measure of life's necessities" and that the defendants have been deliberately indifferent to plaintiff's needs. *Wilson v. Seiter*, 501 U.S. 294 (1991); *see also Hudson v. McMillian*, 503 U.S. 1 (1992). In sum, the Eighth Amendment affords protection against conditions of confinement which constitute health threats, but not against those

which cause mere discomfort or inconvenience. *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir. 1989), *cert. denied*, 493 U.S. 969 (1989); *Harris v. Fleming*, 839 F.2d 1232, 1235-36 (7th Cir. 1988).

Finally, defendants are clearly entitled to the defense of qualified immunity on plaintiff's claims. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

"The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in

question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus, qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). Plaintiff has failed to show that defendants violated

any clearly established laws. Defendants, in the opinion of the undersigned, are entitled to invoke the qualified immunity defense.

Accordingly, it is recommended that the defendants' motion for summary judgment (docket #12) be granted. It is recommended that the court dismiss the complaint without prejudice for failure to exhaust grievance remedies. Alternatively, it is recommended that the court dismiss this case on the merits.

Further, if the court adopts this recommendation the court should decide that an appeal of this action would not be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the court grants defendants' motion for summary judgment, the court can discern no good-faith basis for an appeal. It is recommended that should the plaintiff appeal this decision, the court assess the $255 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he should be required to pay the $255 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten days of your receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR. 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal those issues or claims addressed or resolved as a result of the Report and Recommendation. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:  August 9, 2005         /s/ Timothy P. Greeley
                               TIMOTHY P. GREELEY
                               UNITED STATES MAGISTRATE JUDGE